HARRY N. BAETJER ET ALS., recurrentes, *v.* REGISTRADOR DE LA PROPIEDAD DE HUMACAO, recurrido.

Núm. 1070.—*Sometido:* Junio 15, 1940. *Resuelto:* Junio 28, 1940.

*Fiddler, McConnell & González, y J. M. Morales,* abogados de los recurrentes; el registrador recurrido compareció por escrito.

El Juez Asociado Señor Hutchison emitió la opinión del tribunal.

Ante el Registrador de la Propiedad de Humacao se presentó un documento notarial con súplica de que hiciera ciertas inscripciones de cancelación de hipotecas que en el mismo se mencionan. Más específicamente la solicitud fué al efecto de que el registrador hiciera una inscripción extensa de la cancelación de la primera hipoteca que pesaba sobre una propiedad que se describe como número 24, y una anotación concisa de la cancelación de otras fincas radicadas en el distrito de Humacao.

La finca núm. 24 estaba sujeta a una primera hipoteca de $8,000, con intereses. Se acompañó la suma de $10 en sellos de rentas internas para cubrir los derechos de cancelación y $21 en sellos de la misma clase para cubrir los derechos de las anotaciones concisas.

En lo que a una segunda hipoteca que gravaba la finca número 24 se refería, se solicitó del registrador que hiciera

una inscripción extensa en relación con la cancelación de la misma y una anotación concisa de las otras propiedades. La segunda hipoteca que pesaba sobre dicha propiedad, según se indicó, era por la suma de $100 de principal e intereses. Se acompañó la suma de $2 en sellos de rentas internas para pagar los derechos de la inscripción extensa, más $21 en pago de los derechos de las anotaciones concisas.

En lo que a una tercera hipoteca sobre la finca número 24 se refería, se solicitó del registrador que hiciera una inscripción extensa de la cancelación de la misma, y una anotación concisa de cada una de las otras propiedades descritas en el documento. Se indicó que esta tercera hipoteca era por la suma de $100 de principal, más intereses. Se acompañó la suma de $2 en sellos de rentas internas en pago de los derechos de la inscripción extensa y $21 en pago de los derechos de las anotaciones concisas.

Tan sólo se acompañó la suma de $3 en sellos de rentas internas para cubrir los derechos de tres anotaciones concisas relacionadas con la cancelación de hipotecas sobre otra finca, número 28, conocida como "Eastern Sugar Estates", debido a que ya se habían pagado en el Registro de Caguas $1,479 como importe total de los derechos devengados por la cancelación de dicha finca.

El Registrador de la Propiedad de Humacao suspendió la cancelación solicitada por las siguientes razones que constan al dorso de la escritura de cancelación:

"*Primero:* Porque este registro debe percibir los derechos de cancelación en cuanto a las fincas enclavadas en su demarcación territorial que comprende los municipios de Humacao, Yabucoa, Las Piedras, Naguabo, Vieques y Culebra, respecto de la primera hipoteca por $7,001,087.77, más $857,748.36, intereses por 2 años al 7 por ciento anual, más $500,000 adicionales sin intereses; respecto de la segunda hipoteca por $3,092,000 de capital, intereses al 7 por ciento anual por un año y $60,000 para costas; y respecto de la tercera hipoteca, por $1,380,500 más intereses de un año al 7 por ciento anual y $60,000 para costas;

"*Segundo:* Porque es en el fundo 'Eastern Sugar Estates', finca número 28 del documento, radicado en estos seis municipios en que se practicaron originalmente las inscripciones extensas de estas hipotecas, donde deben hacerse las cancelaciones extensas, por ser dicha finca la que mayores responsabilidades tiene en ellas, todo de acuerdo con los artículos 234 y 236 del título VI de la Ley Hipotecaria y artículos 157 y 257 del Reglamento para su ejecución;

"*Tercero:* Porque de conformidad con el número 3 del arancel para el cobro de estos derechos, que fué aprobado por la Ley número 32 de 30 de noviembre de 1917, estas cancelaciones extensas valen las sumas siguientes:

"Por 6 extensas de la primera hipoteca:     $956.00
"Por 6 extensas de la segunda hipoteca:      346.90
"Por 6 extensas de la tercera hipoteca:      163.80

"*Cuarto:* Porque los interesados, después de haber sido requeridos por escrito no han depositado la suma de $1,453.20 en sellos de rentas internas, que falta para completar $1,530.20 que devengan las operaciones de cancelación así liquidadas, incluyendo 63 notas marginales concisas en 21 fincas más de este registro afectas a las mismas hipotecas."

La Eastern Sugar Estates es un grupo de pequeños molinos azucareros y de otras propiedades que incluyen más de 30,000 cuerdas de terreno situadas dentro de la jurisdicción de cuatro registros de la propiedad distintos, dos de los cuales son Caguas y Humacao. Véanse artículos 8 de la Ley Hipotecaria y 61 del Reglamento. La escritura de cancelación presentada al Registrador de Humacao había sido previamente presentada al Registrador de Caguas y al Registrador de San Juan, sección segunda. Un endoso hecho por el Registrador de Caguas demuestra que la cancelación de las hipotecas de la Eastern Sugar Estates, en tanto en cuanto a las fincas situadas en los municipios de Caguas, Gurabo, Juncos y San Lorenzo se refería, se había hecho constar en el Registro de la Propiedad de Caguas, y que se habían cancelado sellos de rentas internas por un total de $1,479, de conformidad con el número 3 del arancel y Código Político.

La sección 22 de la "Ley asignando sueldos a los Registradores de la Propiedad, y para otros fines," aprobada el 10 de marzo de 1904, según fué enmendada en 1917 (Leyes de ese año, volumen II, pág. 309), lee en parte así:

"El arancel de los derechos que se han de pagar en lo sucesivo por las operaciones de los Registros de la Propiedad fijando y cancelando los correspondientes sellos de rentas internas en la forma que esta Ley dispone, será el siguiente:

" *         *         *         *         *         *         *

"Número 3. Por todas las operaciones, sea cualquiera su forma, que a instancia de parte deban verificarse para la cancelación o redención de hipotecas, censos o derechos reales, incluyendo el asiento de presentación y notas marginales, se devengará por cada finca:

" *         *         *         *         *         *         *

" (*m*) de veinte mil a treinta mil dólares, $13. Y por cada mil dólares o fracción de mil dólares más se cobrarán diez centavos adicionales. Si la cancelación se niega se cobrará solamente la mitad de los derechos por esta ley designados. Las cancelaciones concisas verificadas por notas marginales, sólo devengarán un dólar."

El artículo 119 de la Ley Hipotecaria dispone:

"Cuando se hipotequen varias fincas a la vez por un solo crédito, se determinará la cantidad o parte de gravamen de que cada una deba responder."

En el recurso de *Solís* v. *Registrador,* 19 D.P.R. 1038, este tribunal resolvió, conforme aparece del sumario, lo siguiente:

"Cuando se constituye una hipoteca sobre una sola finca radicada en dos municipios distintos de un registro de la propiedad no es necesario describir en el título la parte de dicha finca que radica en cada uno de los municipios, pues en el registro especial de cada uno de éstos y en la primera inscripción de la parte respectiva de la finca ha de constar dicha descripción; y tampoco está obligado el deudor a determinar la cantidad o parte de gravamen de que cada porción de la finca debe responder, pues en ese caso no es de aplicación el artículo 119 de la Ley Hipotecaria."

180

En el de *Central Cambalache* v. *Registrador*, 52 D.P.R. 797, resolvimos, unos veinticinco años más tarde, según aparece del sumario:

"El que a virtud del régimen interior de los registros una finca agrupada que se extienda por tres municipios del territorio del mismo registro haya que registrarla en tres tomos separados, no autoriza al registrador para exigir el pago de derechos arancelarios como si se tratara de tres fincas y de tres derechos distintos."

El artículo primero de la Ley Hipotecaria ordena que:

". . . Si una finca estuviere situada en la circunscripción de dos o más registros, se inscribirá en todos ellos."

El número 3 del arancel, supra, no es una innovación. Es una nueva redacción de su prototipo, el número 5 del arancel vigente durante la soberanía española. El artículo 8 de la Ley Hipotecaria y el 61 del Reglamento no son nuevos. Coexistían con el artículo 1 de la ley, con el antiguo "Arancel de los honorarios que devenguen los registradores de la propiedad" y con las "Reglas Generales" en vigor por muchos años anteriores al cambio de soberanía. Los incisos 7 y 8 de esas "Reglas Generales" leían así: (*Laws, Ordinances, Decrees and Military Orders, effective in Puerto Rico May 1, 1900, Part 2, 1256.*)

"7. Para el efecto de que el Registrador pueda graduar sus honorarios con arreglo a las disposiciones de este Arancel, deberá atenerse a lo que resulte del título respectivo, prescindiendo, en el caso de que en el título se mencionasen gravámenes que en el Registro resultasen cancelados, del importe de tales gravámenes. Si el valor de cada finca o derecho no constase del título, se exigirá al presentante que lo manifieste en una nota en papel simple, que se archivará en la oficina. Si no hace esa manifestación, tendrá el Registrador derecho a percibir la cuota mayor de la respectiva escala o la que estimase procedente.

"8. Cuando para fijar el valor correspondiente a alguna finca o derecho real que se transmita, sea necesario computar algún gravamen que les afecte y afecte además a otros bienes no estando determinada la responsabilidad especial de cada uno de ellos, se

presentará una nota en papel simple, en la cual se detallen los bie-- nes todos que están sujetos al gravamen y el valor de cada uno de ellos, con objeto de que el Registrador haga la cuenta procedente, computando al gravamen en cuanto pesa sobre la finca, o derecho que se trate de inscribir, el importe que según el valor de éstos les corresponda a prorrata con el de los demás bienes gravados. Si no se presentase esta nota, podrá prescindir el Registrador del grava- men en cuestión.''

Aparentemente a los redactores de estas ''Reglas Gene- rales'' no se les ocurrió anticipar las dificultades que podrían surgir en el cálculo de los derechos al cancelarse una hipo- teca otorgada sin distribución de responsabilidad entre las partes integrantes de la propiedad hipotecada situadas en distintos registros. La omisión es significativa. La expli- cación puede o no hallarse en el artículo 119 de la Ley Hipo- tecaria, supra. Sea esto como fuere, en el presente caso la escritura de cancelación no ofrece base para distribuir la **responsabilidad entre las varias partes** de la Eastern Sugar Estates radicadas en distintos registros. A menos que el caso de Solís pueda ser distinguido, el acreedor y los deudo- res al tiempo de otorgar la hipoteca, no estaban obligados a limitar la responsabilidad de ninguna parte de la finca hipotecada a menos del importe total de la hipoteca. Si hubieran deseado hacerlo así al momento de cancelarse la hipoteca o posteriormente, ya ello era demasiado tarde Surge la cuestión de si ahora deben ser castigados los deu- dores hipotecarios por haber dejado, por inadvertencia o por alguna otra causa, de insistir y obtener una distribución de la responsabilidad al tiempo de otorgarse la hipoteca.

El artículo 23 del Reglamento dispone:

''Si en un mismo título se enajenaren o gravaren bienes situados en territorio perteneciente a diferentes registros, se inscribirán aqué- llos en el registro correspondiente, surtiendo efecto la inscripción desde la fecha de la presentación del título en cuanto a los bienes a que la misma se refiera. Si alguna finca radicare en territorio perteneciente a dos o más registros, se hará la inscripción en todos ellos, incluyendo en cada uno tan sólo la parte de la misma finca que en él estuviere situada.''

Para fines de esta opinión podemos asumir con el registrador que si una propiedad formada por la agrupación de cuatro parcelas radicadas en otros tantos registros fuera hipotecada, digamos por $100,000, y si el acreedor y deudor hipotecario convienen en que la parte de la finca hipotecada que se halla en el registro *A* responda de $50,000, la parte que se halla en el registro *B* de $25,000, la parte que se encuentra en el registro *C* de $15,000 y la ubicada en el registro *D* de $10,000, entonces, al cancelarse la hipoteca y presentarse la escritura de cancelación, los derechos por efectuar los asientos de cancelación necesarios en cada uno de los cuatro registros serían los mismos que si la parte de la finca hipotecada en dicho registro hubiera sido hipotecada separadamente por el importe de que, según se hacía constar, la finca respondía. La cuestión es si en ausencia de tal convenio—después que uno de los cuatro registradores, al presentársele una escritura de cancelación, ha cobrado en' sellos de rentas internas derechos ascendentes a una suma igual a la que se hubiera requerido si la parte de la finca hipotecada dentro de su distrito hubiera sido hipotecada separadamente por $100,000—cada uno de los otros registradores, al presentársele la misma escritura de cancelación, tiene derecho a exigir y cobrar una suma igual, obligando así al deudor hipotecario a pagar cuatro veces lo que se le hubiera exigido pagar si no hubiera dejado de obtener de su acreedor tal convenio al momento de otorgar la hipoteca. Esta cuestión, a nuestro juicio, debe contestarse en la negativa.

No se trata de un caso de doble contribución. No existe cuestión alguna de contribución *vel non*. Estamos contestes con el registrador en que los derechos estatutarios "no tienen el carácter de una contribución sino más bien el de una compensación que los interesados vienen obligados a satisfacer por los servicios que en ellos les presten y los beneficios que reciben." *León* v. *Registrador,* 47 D.P.R. 890. Convenimos también en que las notas de un registrador no

son obligatorias para otro registrador y en que cada uno de ellos debe hacer sus propias decisiones bajo su propia responsabilidad. El registrador puede o no estar en lo cierto al sostener que una o más inscripciones extensas pueden ser necesarias en vez de una o más de las notas marginales solicitadas por los recurrentes. Lo que resolvemos es que—fuera de cualquier cuestión relativa a la compensación que ha de pagarse por efectuar las notas marginales solicitadas por los recurrentes, cuestión que no está ahora ante nos—la compensación a ser pagada por cualesquiera servicios prestados por el Registrador de Humacao estaba incluída en los derechos cobrados por el Registrador de Caguas y que cualesquiera servicios adicionales que pudieran requerirse debían prestarse sin pago de compensación adicional alguna.

*La nota recurrida debe ser revocada. La escritura de cancelación será devuelta al Registrador de la Propiedad con orden de que efectúe aquellos asientos que él hubiera efectuado de haberse pagado los derechos adicionales exigidos por él.*